April 27, 2020

The Honorable Jesse M. Furman
Thurgood Marshall U.S. Courthouse
United States District Court for the Southern District of New York
40 Centre Street, Room 2202
New York, NY 10007

> RE: Plaintiffs' supplemental letter regarding production of a privilege log in *State of New York v. Wolf, et al.*, 20-CV-1127 (JMF), and *Lewis-McCoy v. Wolf, et al.*, 20-CV-1142 (JMF).

Dear Judge Furman,

As directed by the Court (Docket No. 33), Plaintiffs submit this joint letter addressing whether a privilege log should be required in light of their preliminary review of the Administrative Record.

The Second Circuit's "logic [in *In re Nielsen*] suggests that district courts should grant motions to compel production of a privilege log in APA actions as a matter of course." *New York v. U.S. Immigration & Customs Enf't*, 19-cv-8876 (JSR), 2020 WL 604492, at *3 (S.D.N.Y. Feb. 9, 2020); *see In re Nielsen*, No. 17-3345, slip op. at 3 (2d Cir. Dec. 27, 2017) (Docket No. 24-1). No factual inquiry is therefore necessary for the Court to conclude that a privilege log is warranted.

The Court need not decide whether any inquiry is required here, however, as Plaintiffs' initial review[1] of the Administrative Record produced in this action confirms the need for a privilege log identifying the basis of, and justification for, the agency's determination to withhold obviously relevant material from judicial scrutiny.

*1.* First, Defendants have filed an Administrative Record so cursory as to suggest the wholesale exclusion of pertinent materials. The Second Circuit noted in *In re Nielsen* that "[i]t is difficult to imagine a decision as important as whether to repeal DACA would be based upon a factual record of little more than 56 pages . . . ." Slip op. at 3. The same observation may be made here: Defendants are asking the Court to conclude that the decision to exclude every resident of the country's fourth-largest state from a program mandated by the Intelligence Reform and Terrorism Prevention Act was made on a 64-page record. (Docket No. 37-1.) This circumstance alone justifies compelling Defendants to identify all records DHS considered in reaching its decision, and to explain the basis for excluding them from the Administrative Record presented to the Court.

*2.* In addition, the Administrative Record is extensively redacted with no stated basis of

---

[1] Plaintiffs do not yet take any position on whether completion of the Administrative Record or extra-record discovery will be necessary, and will meet and confer with defense counsel before reaching any conclusion or seeking relief from the Court on those matters. *See* April 1, 2020 Order at 2 (Docket No. 22).

privilege to justify those redactions. Of the 64 pages that Defendants have certified constitute "the non-privileged documents considered by DHS," (Docket No. 37), more than half—33 pages—are redacted in whole or in part. (Docket No. 37-1.) These extensive withholdings also merit an explanation from the agency: the Supreme Court only recently reiterated the "settled proposition[]" that "in order to permit meaningful judicial review, an agency must 'disclose the basis' of its action." *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2573 (2019) (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 167-69 (1962)); *see also SEC v. Chenery Corp.*, 318 U.S. 80, 94 (1943) ("[T]he orderly functioning of the process of review requires that the grounds upon which the administrative agency acted be clearly disclosed and adequately sustained."). DHS's extensive and unexplained exclusions from the documents it admittedly considered in reaching its decision fail this basic obligation.

Even by Defendants' standard for determining when a privilege log should be ordered, the record now warrants explanation. Defs.' Letter at 3 (Docket No. 23) (asking the Court to refrain from ordering a privilege log until review of the Administrative Record permits the Court to "determine whether . . . it can assess Defendants' action on the record before it"). Among other considerations, it is hard to see how the Court can determine whether DHS made a decision that "runs counter to the evidence" before it, or failed to offer a "rational connection between the facts found and the choice made," *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 42-43 (1983); without at least an explanation from the agency of the basis for shielding that evidence and those facts from the Court's scrutiny. *E.g.*, DHSGLL006-008 (redacting selected impacts of "[t]he inability of CBP to validate against NY state databases"); DHSGLL032 (redacting information regarding "Other States and Territories Restricting DMV Information Access to DHS"); DHSGLL048-061 (redacting information from the TTP Handbook that appears to describe eligibility determinations, relevance of records, and criminal history evaluations).

Plaintiffs' arbitrary-and-capricious claim may also present the question whether the agency's stated basis for its decision is invalid because "it rested on a pretextual basis." *Dep't of Commerce*, 139 S. Ct. at 2573. The Administrative Record now reveals that to accomplish its preferred policy goals, the agency considered "[e]xcluding residents of uncooperative states from participating in DHS Trusted Traveler Programs." DHSGLL040. The APA prohibits "contrived" explanations for agency decisions. *Dep't of Commerce*, 139 S. Ct. at 2575 ("We are presented, in other words, with an explanation for agency action that is incongruent with what the record reveals about the agency's priorities and decisionmaking process."). If DHS's basis for imposing the Trusted Traveler Ban is not operational necessity, as claimed (Docket No. 1-1, at 2-3), but instead is an effort to punish New York's residents because the legislature enacted a statute DHS does not like, the Ban would likely fail arbitrary-and-capricious review. Yet Defendants are withholding from the Court and Plaintiffs the very evidentiary record that would permit examination of that question. *See, e.g.*, DHSGLL040.

The Court may therefore conclude that the inability to assess the challenged agency action on the record before the Court suffices to warrant production of a privilege log. Defs.' Letter at 3 (Docket No. 23); *see Tafas v. Dudas*, 530 F. Supp. 2d 786, 800 (E.D. Va. 2008) ("Once a court has determined that a plaintiff has provided enough evidence for the court to conclude that the agency has omitted otherwise relevant material from the administrative record, the agency must explain its decision to do so.").

*3.* Finally, to the extent any threshold showing of bad faith is required to justify a privilege log,[2] that showing can be met here. As noted in Plaintiffs' initial letter (Docket No. 24, at 5)—and as has now been confirmed by the redacted Administrative Record (Docket No. 37-1)—the DHS official in charge of the agency's Office of Strategy, Policy, and Plans proposed in a memo to the Acting Secretary that one "[o]ption for addressing laws that restrict access to state DMV information" was to "[e]xclude residents of uncooperative states from participating in DHS Trusted Traveler Programs." DHSGLL031, 039-040. Intentionally targeting a state's population to compel changes in that state's laws would meet any definition of bad faith.

The Administrative Record bears other hallmarks of potentially improper decisionmaking. As produced in redacted form, the Administrative Record shows that on the morning of February 4, 2020—the day of the President's State of the Union, and one day before the Trusted Traveler Ban was announced, *see* New York Compl. ¶¶ 8-10, 56-57—the DHS Deputy General Counsel asked for a phone call with CBP officials "to discuss the impact of the New York DMV law on the Global Entry process from the operational perspective." DHSGLL063. This email exchange refers to other emails nowhere included in the record. DHSGLL062. The timing and substance of this request, coming one day before the Trusted Traveler Ban was announced, at minimum suggest a search for explanations to justify a decision that had already been made. *Tummino v. Von Eschenbach*, 427 F. Supp. 2d 212, 233 (E.D.N.Y. 2006) ("[A] plausible interpretation . . . is that senior management . . . had long since decided" how to proceed, "but needed to find acceptable rationales for the decision").

And the urgency of the request ("I am assuming that he will want to schedule the call as soon as possible," DHSGLL063), on the same day the President previewed the Trusted Traveler Ban in the State of the Union, provide further evidence of potential bad faith. *Tummino v. Torti*, 603 F. Supp. 2d 519, 544-45 (E.D.N.Y. 2009) ("the mere existence of 'extraneous pressure' from the White House or other political quarters would render [the agency's] decision invalid" under the APA) (quoting *D.C. Fed'n of Civic Ass'ns v. Volpe*, 459 F.2d 1231, 1248-49 (D.C. Cir. 1971)); *Sokaogon Chippewa Cmty. v. Babbitt*, 961 F. Supp. 1276, 1280 (W.D. Wis. 1997) ("If there are adequate grounds to suspect that an agency decision was tainted by improper political pressure, courts have a responsibility to bring out the truth of the matter.").

Defendants should produce a privilege log identifying materials withheld from the Administrative Record so the Court and Plaintiffs can adequately test the basis for the agency's decision.

        Respectfully submitted,

        LETITIA JAMES
        *Attorney General of the State of New York*

---

[2] There is no requirement that Plaintiffs make any showing—much less a "strong showing"—of bad faith to warrant production of a privilege log at this stage, *see* Pls.' Letter at 4-5 (Docket No. 24); and the Second Circuit has not applied such a standard. *In re Nielsen*, slip op. at 3-4; *see also New York*, 2020 WL 604492, at *3 (ordering privilege log even though "there is no suggestion . . . [of] bad faith").

By: */s/ Matthew Colangelo*
Matthew Colangelo, *Chief Counsel for Federal Initiatives*
Elena Goldstein, *Deputy Chief, Civil Rights Bureau*
Daniela L. Nogueira, *Assistant Attorney General*
Office of the New York State Attorney General
28 Liberty Street
New York, NY 10005
Phone: (212) 416-6057
matthew.colangelo@ag.ny.gov

Attorneys for Plaintiff in 20-CV-1127


NEW YORK CIVIL LIBERTIES UNION FOUNDATION

By: */s/ Antony P.F. Gemmell*
Antony P.F. Gemmell
Molly K. Biklen
Jessica Perry
Jordan Laris Cohen
Christopher T. Dunn
125 Broad Street, 19th Floor
New York, NY 10004
212-607-3300
agemmell@nyclu.org

Attorneys for Plaintiffs and Putative Class in 20-CV-1142