September 10, 2020

The Honorable Jesse M. Furman
Thurgood Marshall U.S. Courthouse
United States District Court for the Southern District of New York
40 Centre Street, Room 2202
New York, NY 10007

      RE:    Plaintiffs' joint opposition to Defendants' motion for a protective order in *State of New York v. Wolf*, 20-CV-1127 (JMF), and *Lewis-McCoy v. Wolf*, 20-CV-1142 (JMF).

Dear Judge Furman,

      Plaintiffs oppose Defendants' motion for a protective order. ECF No. 111.[1] Defendants seek leave to withhold extensive portions of their report and accompanying declarations regarding the federal government's conduct in this litigation, and to submit the complete filings for *ex parte* review only. Plaintiffs respectfully request that the Court deny Defendants' motion because a protective order would be inconsistent with the presumption of access to judicial documents, is unjustified by the cursory privilege claims Defendants present, and would prejudice Plaintiffs' ability to respond to the report and to present their forthcoming motion for attorneys' fees.

      On July 29, 2020, following "Defendants' deeply troubling revelations that statements and representations they made in these cases . . . were 'inaccurate' and 'misleading,'" the Court ordered Defendants to "file a comprehensive and detailed report" to "make a comprehensive record of any and all 'inaccurate' or 'misleading' statements in their prior submissions." ECF No. 93 at 4–5. Noting Plaintiffs' intent to seek leave to take discovery or for an order directing Defendants to provide further explanation, the Court described this initial report as a "limited inquiry . . . if only to aid the Court in deciding later whether and to what extent a more detailed inquiry is warranted." *Id.* at 3, 5. The Court set out specific requirements for the information this report should contain, and directed Plaintiffs to respond one week after the report was filed "indicating whether they have reason to believe that Defendants made inaccurate or misleading statements beyond those identified in the report." *Id.* at 4–5; *see* ECF Nos. 103, 108.

      On September 4, 2020, Defendants filed a motion for a protective order seeking leave to redact—from the report and declarations due that same day—purportedly privileged portions of those filings.[2] A protective order requires a showing of good cause. *See* Fed. R. Civ. P. 26(c).[3]

---

[1] All docket references are to 20-CV-1127 (JMF).

[2] As Defendants' motion notes, counsel first sought Plaintiffs' position on their filing after the close of business on the Friday of a holiday weekend. ECF No. 111. Defendants did not produce unredacted versions of the report and declarations to Plaintiffs, and filed the unredacted report and declarations under seal without first obtaining the Court's leave. *See* ECF No. 112.

[3] Defendants cite Rule 5.2(e), which permits redaction for privacy purposes; the same "good cause" standard applies for a protective order under Rule 26(c).

Good cause exists "when a party shows that disclosure will result in a clearly defined, specific and serious injury," which "must be significant, not a mere trifle." *In re General Motors LLC Ignition Switch Litig.*, No. 14-MD-2543 (JMF), 2015 WL 4522778, at *3 (S.D.N.Y. July 24, 2015) (quoting cases).

The Second Circuit has explained that the "presumption of access" to judicial documents "is based on the need for federal courts . . . to have a measure of accountability and for the public to have confidence in the administration of justice." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006) (quoting *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995)). Courts apply the presumption of access by (1) determining the weight of the presumption based on "the role of the material at issue in the exercise of Article III judicial power," and (2) "balancing competing considerations" against access. *Id.* at 119 (quoting *Amodeo*, 71 F.3d at 1049).

*1.* Defendants appear to concede that the report and declarations are "judicial documents," ECF No. 111 at 2, but argue that the weight of the presumption of access is not strong here because the Court's inquiry into Defendants' acknowledged misrepresentations is "ancillary to the court's core role in adjudicating [this] case." *Id.* (quoting *Brown v. Maxwell*, 929 F.3d 41, 50 (2d Cir. 2019)). Plaintiffs disagree. Defendants themselves have acknowledged that the inaccurate and misleading representations they made in the course of this litigation "undermine a central argument in defendants' briefs and declarations to date," ECF No. 89 at 2, and as the Court noted, these statements "formed '*the* rationale' for DHS's original decision and went to the heart of the issues in dispute," ECF No. 92 at 2, 4. Plaintiffs' motion for summary judgment is now unopposed and the parties recently jointly advised the Court that continued deferral of action on Plaintiffs' motion was unnecessary. ECF No. 109. Understanding the basis for Defendants' misrepresentations to the Court and Plaintiffs alike on "*the* rationale" for the challenged decision is central, not ancillary, to the Court's exercise of its Article III judicial power.

This is especially so in light of Defendants' striking new disclosure to the Court that CBP "is continuing to evaluate the means by which it can obtain DMV information in order to vet all Trusted Traveler Program applicants," ECF No. 110—an effort CBP is apparently pursuing notwithstanding Defendants' earlier acknowledgment that it was *not true* to claim in this litigation that DMV information was necessary to determine that TTP applicants met all eligibility requirements. ECF No. 89. Particularly where Defendants now openly admit that they may try again to impose their concededly unlawful policy, information regarding the full extent of Defendants' inaccurate and misleading claims in this litigation should be afforded the strongest weight in favor of disclosure.

In addition, the Court's "inherent authority to conduct an independent inquiry" to determine whether it has been the victim of fraud, ECF No. 93, is equally central to the Court's Article III power. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991) (court's authority to inquire into fraudulent conduct and impose sanctions "transcends a court's equitable power concerning relations between the parties and reaches a court's inherent power to police itself"). Far from being an ancillary matter, the report regarding Defendants' misrepresentations is central to the Court's Article III power and should be subject to the strongest presumption of access.

*2.* The competing considerations against access—here, assertions of privilege and work-product protection—do not outweigh the strong presumption in favor of disclosure. As an initial matter, Defendants have (by their own admission) not even attempted to justify their redactions with specificity: They produced no privilege log to permit an examination of their privilege assertions, and acknowledged to the Court that "in the interest of timely submission" of the report, their motion for a protective order "provides only high-level substantiation of its privilege assertions, rather than line-by-line analysis of the proffered redactions." ECF No. 111 at 5 n.1. This "high-level substantiation" contravenes controlling law requiring that assertions of privilege must be stated with sufficient particularity to permit other parties to assess the claim. *See*, *e.g.*, *SEC v. Yorkville Advisors, LLC*, 300 F.R.D. 152, 157–58 (S.D.N.Y. 2014); *see also* Fed. R. Civ. P. 26(b)(5)(A)(ii); Local Civ. R. 26.2. Defendants have not even endeavored to meet this obligation, and their arguments against disclosure should be afforded little weight for that reason alone. *See Micilli v. Liddle & Robinson LLP*, No. 15-cv-2141 (JMF), 2016 WL 2997507, at *4 (S.D.N.Y. May 23, 2016) (a party's burden to establish privilege is "not discharged by mere conclusory or *ipse dixit* assertions").

In any event, and although valid assertions of privilege may be weighed as a consideration against access, Defendants' privilege assertions should be rejected here.

The deliberative process privilege is a qualified privilege that "may be overridden in circumstances where reason and experience suggest that the claim of privilege should not be honored." *Citizens Union of City of N.Y. v. Attorney Gen. of N.Y.*, 269 F. Supp. 3d 124, 159 (S.D.N.Y. 2017). Applying the balancing test set out in *Winfield v. City of N.Y.*, 2018 WL 716013 (S.D.N.Y. Feb. 1, 2018), all five factors weigh in favor of disclosure here: the evidence being withheld is relevant to further proceedings in this case and is unavailable from other sources; this litigation is extremely consequential because it relates to the exclusion of an entire state's population from a statutorily-mandated travel screening program; the federal government's role in this case is central; and disclosure will not chill future candid communications, because this narrow disclosure relates to the unusual circumstance of admitted misrepresentations by a party in litigation. In addition, courts have recognized that the deliberative process privilege should not apply where the documents "may shed light on government misconduct." *In re Sealed Case*, 121 F.3d 729, 738 (D.C. Cir. 1997). Because the report and declarations at issue here were prepared precisely to "shed light on government misconduct," any otherwise-valid assertion of the deliberative process privilege should be rejected.[4]

---

[4] Plaintiffs have previously argued to the Court that the deliberative process privilege should not apply at all where, as here, "the deliberative or decisionmaking process is the 'central issue.'" *In re Delphi Corp.*, 276 F.R.D. 81, 85 (S.D.N.Y. 2011); *see also Children First v. Martinez*, No. 04-CV-0927, 2007 WL 4344915, at *7 (N.D.N.Y. Dec. 10, 2007) ("[W]hen the decision-making process itself is the subject of the litigation, the deliberative process privilege cannot be a bar to discovery."). Plaintiffs recognize that the Court previously rejected this argument on the ground that the cited authority did not involve Administrative Procedure Act litigation, and that APA cases "ordinarily do not concern the agency decision-maker's subjective intent." ECF No. 62 at 3. Here, however, the decision-makers' subjective intent *is* at issue, because the report was

The attorney-client privilege "protects communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal assistance." *Brennan Ctr. for Justice v. DOJ*, 697 F.3d 184, 207 (2d Cir. 2012). Defendants assert that the attorney-client privilege justifies withholding portions of the report and declarations because those documents relate to litigation strategy and "reflect a diagnostic assessment of thousands of communications exchanged during the course of this litigation." ECF No. 111 at 2–3. But Defendants' interests in protecting the confidentiality of attorney-client communications "are minimal or non-existent when they are 'made for the purpose of getting advice for the commission of a fraud or crime.'" *In re General Motors LLC*, 14-MD-2543 (JMF), 2015 WL 7574460, at *3 (S.D.N.Y. Nov. 25, 2015) (quoting *In re Richard Roe, Inc.*, 68 F.3d 38, 40 (2d Cir. 1995)). A party seeking disclosure pursuant to the crime-fraud exception must show "probable cause to believe that a . . . fraud has been attempted or committed," and that "the communications were in furtherance thereof." *Id.* at *4 (quoting *Roe*, 68 F.3d at 40). Without presupposing that a fraud on the Court has occurred, the entire purpose of ordering Defendants to prepare a report and corrective declarations was to give the Court and Plaintiffs a full accounting of what exactly happened here, in light of Defendants' concessions that they made inaccurate and misleading statements that go to "*the* rationale" for DHS's decision to ban New Yorkers from enrolling in the Trusted Traveler program. This circumstance clears the "probable cause" bar, and the attorney-client privilege should be afforded little weight.

Defendants' cursory invocation of the work-product protection should likewise be rejected. The work-product doctrine protects documents "that are prepared in anticipation of litigation or for trial by or for another party or its representative." Fed. R. Civ. P. 26(b)(3); *see In re General Motors LLC Ignition Switch Litig.*, 80 F. Supp. 3d 521, 531 (S.D.N.Y. 2015). Even assuming work-product applies to the documents Defendants have redacted, that protection is not absolute; the Court can compel disclosure where Plaintiffs have "substantial need . . . and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii). Here, there is no other means for Plaintiffs to obtain the evidence Defendants have redacted regarding their inaccurate statements in this litigation. And the crime-fraud exception applies to the work-product doctrine as well, *see In re General Motors LLC*, 2015 WL 7574460, at *3, and warrants disclosure of the materials claimed to be protected on work-product grounds for the same reasons identified above.

Defendants' reliance on the law enforcement privilege should be rejected as well. This privilege protects "information pertaining to law enforcement techniques and procedures," and is "qualified, not absolute." *In re City of New York*, 607 F.3d 923, 944–45 (2d Cir. 2010). The privilege can be overcome where (1) the suit is non-frivolous and brought in good faith, (2) the information sought is unavailable through other sources, and (3) the party seeking disclosure has a compelling need for the information. *Id.* at 948. Applying this balancing test, the Court already rejected multiple assertions of the law enforcement privilege by Defendants earlier in this litigation, *see* ECF No. 62 at 9–10, and these considerations weigh even more strongly in favor of disclosure now: this suit is not frivolous (indeed, Defendants have conceded on the merits); the material is unique because it comes from Defendants' report and corrective

---

prepared for the express purpose of disclosing all instances of inaccurate representations to the Court in order to inform further proceedings.

declarations identifying misstatements in this litigation; and there is a compelling need for disclosure because the redacted information goes directly to Defendants' justifications for the Trusted Traveler ban.  *See id.*

None of Defendants' privilege assertions outweigh the exceedingly strong presumption of public access to these judicial documents, which go to the core of this Court's exercise of its Article III power.

*3.*  Finally, under the existing deadlines set by the Court, Plaintiffs are obligated to identify by September 11 whether they believe Defendants' report omits any instances of misleading conduct, and must file their motion for attorneys' fees by September 14.  Defendants' refusal to disclose the full extent of their self-identified misconduct will prejudice Plaintiffs' ability to comply with both deadlines: Plaintiffs are unable to identify misconduct that may be missing from the report if they are unable to see the entire report; and to the extent Plaintiffs' request for attorneys' fees may turn on Defendants' bad faith, that showing may likewise be impaired by Defendants' effort to shield evidence of bad faith from disclosure.

Plaintiffs respectfully request that the Court deny Defendants' motion for a protective order and direct that the unredacted report and accompanying declarations be provided to Plaintiffs and filed publicly on the docket of this action.

Respectfully submitted,

LETITIA JAMES
*Attorney General of the State of New York*

By: */s/ Matthew Colangelo*
Matthew Colangelo, *Chief Counsel for Federal Initiatives*
Elena Goldstein, *Deputy Chief, Civil Rights Bureau*
Daniela L. Nogueira, *Assistant Attorney General*
Office of the New York State Attorney General
28 Liberty Street
New York, NY 10005
Phone: (212) 416-6057
matthew.colangelo@ag.ny.gov

Attorneys for Plaintiff in 20-CV-1127


NEW YORK CIVIL LIBERTIES UNION FOUNDATION

By: */s/ Antony P.F. Gemmell*
Antony P.F. Gemmell
Molly K. Biklen
Jessica Perry
Jordan Laris Cohen
Christopher T. Dunn

125 Broad Street, 19th Floor
New York, NY 10004
212-607-3300
agemmell@nyclu.org

Attorneys for Plaintiffs in 20-CV-1142